[Cite as *State v. Miller*, 2024-Ohio-3182.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| JAMES MILLER | : | Case No. 2023 CA 00167 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:                    Appeal from the Court of Common
                                                                    Pleas, Case No. 2023 CR 1788


JUDGMENT:                                                   Affirmed


DATE OF JUDGMENT:                               August 21, 2024


APPEARANCES:

For Plaintiff-Appellee                                     For Defendant-Appellant

KYLE L. STONE                                            DONOVAN R. HILL
PROSECUTING ATTORNEY                        122 Market Avenue North
                                                                    Dewalt Building, Suite 101
CHRISTOPHER A. PIEKARSKI                    Canton, OH  44702
110 Central Plaza South, Suite 510
Canton, OH  44702-1413

*King, J.*

{¶ 1} Defendant-Appellant, James Miller, appeals his November 16, 2023 robbery conviction in the Court of Common Pleas of Stark County, Ohio. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 10, 2023, the Stark County Grand Jury indicted Miller on one count of aggravated robbery in violation of R.C. 2911.01, one count of felonious assault in violation of R.C. 2903.11, one count of attempted felonious assault in violation of R.C.2903.11 and 2923.02, one count of resisting arrest in violation of R.C. 2921.33, one count of criminal trespass in violation of R.C. 2911.21, one count of obstructing official business in violation of R.C. 2921.31, and one count of possession of a fentanyl-related compound in violation of R.C. 2925.11. The charges arose from an incident at a Walmart store.

{¶ 3} On July 31, 2023, a loss prevention officer observed Miller cutting open packages of baseball/trading cards with a pocketknife, removing the cards from the packaging, and placing them in a box in his cart. A uniformed security officer approached Miller and a scuffle between the two ensued. The loss prevention officer was also present. Knives were observed on the ground coming from Miller, including one hanging from a lanyard around his neck. The loss prevention officer kicked the knives out of Miller's reach. The security officer removed the knife from around Miller's neck. Other officers arrived to assist and Miller was secured in handcuffs. A search of Miller's person produced two additional knives.

{¶ 4} On October 23, 2023, the trial court dismissed the attempted felonious assault count at the state's request. Also on October 23, 2023, Miller pled guilty to the counts of criminal trespass, obstructing, and possession. The trial court found him guilty of those charges.

{¶ 5} On October 25, 2023, a jury trial commenced on the remaining charges, aggravated robbery, felonious assault, and resisting arrest. After the state rested, Miller moved for acquittal under Crim.R. 29. The trial court granted the motion as to the resisting count, but denied the motion on the remaining two counts. At the state's request, the trial court instructed the jury on the lesser included offense of robbery in violation of R.C. 2911.02. The jury found Miller not guilty of the two indicted counts, but found him guilty of the offense of robbery. By judgment entry filed November 16, 2023, the trial court sentenced Miller to an aggregate indefinite term of a minimum of six years to a maximum of nine years in prison.

{¶ 6} Miller filed an appeal with the following assignments of error:

I

{¶ 7} "APPELLANT'S CONVICTION OF ROBBERY WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE."

II

{¶ 8} "APPELLANT'S CONVICTION OF ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I, II

{¶ 9} In his two assignments of error, Miller claims his conviction of robbery was against the sufficiency and manifest weight of the evidence. We disagree.

{¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

{¶ 11} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist. 1983). *See also Thompkins*. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 12} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison,* 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418 (1997).

{¶ 13} Miller challenges his conviction of robbery in violation of R.C. 2911.02(A)(1): "No person, in attempting or committing a theft offense or in fleeing immediately after the

attempt or offense, shall . . . have a deadly weapon on or about the offender's person or under the offender's control." It is uncontested Miller committed a theft offense. The question Miller poses is whether he did so with a deadly weapon.

{¶ 14} First, Miller cites Crim.R. 29(A) and argues the trial court erred in not dismissing the charge of aggravated robbery and in instructing the jury on robbery. He does not elaborate any further. Miller was not convicted of aggravated robbery and therefore, the issue is moot. *State v. Williams,* 74 Ohio St.3d 569, 576 (1996) (defendant was acquitted of rape, rendering the Crim.R. 29 motion on that charge moot). The sufficiency of the robbery charge will be addressed further in the opinion.

{¶ 15} Next, Miller argues the elements of aggravated robbery in violation of R.C. 2911.01, specifically arguing there was no evidence that he had a deadly weapon on or about his person or under his control and either displayed the weapon, brandished it, indicated that he possessed it, or used it. Appellant's brief at 10. But again, Miller was not convicted of aggravated robbery, only robbery. The jury did not find Miller guilty of the elements of aggravated robbery, so whether or not there was evidence that he "either displayed the weapon, brandished it, indicated that he possessed it, or used it" is immaterial.

{¶ 16} As to robbery, Miller argues there was no evidence that he had a deadly weapon on his person during the incident. He argues a knife is not presumed to be a deadly weapon and the state concedes "a knife is not, per se, a deadly weapon." Appellee's Brief at 12. A "deadly weapon," for purposes of robbery, "means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A) and

2911.02(C)(1). Miller does not argue that any knives found during the incident were not capable of inflicting death. Appellant's Brief at 12. Rather, he argues the relevant inquiry is whether he "possessed, carried, or used his knives as weapons." *Id.* He argues he never used his knives as weapons. He used one to open packages and that was his only use. Thus, he argues, the evidence is insufficient to prove the knives found at the scene were "deadly weapons."

{¶ 17} The loss prevention officer testified she observed Miller slicing open baseball/trading card packages with a pocketknife. Vol. II T. at 20-21. Because he possessed a knife, she decided to ask Miller to leave the store to avoid a confrontation. *Id.* at 23-24, 42-43. She asked the security officer working the store to accompany her. *Id.* at 24. Upon contact, Miller immediately started resisting and a scuffle ensued between Miller and the security officer. *Id.* at 25-26. The loss prevention officer grabbed Miller by the back of the shirt to try to pull him off of the security officer "and knives start popping out everywhere, he had a knife around his neck." *Id.* at 26. She kicked "three to four" knives out of Miller's reach except for the one around his neck. *Id.* at 26, 30, 32; State's Exhibit 4. She was worried about that knife because "it was still attached." *Id.* at 32.

{¶ 18} On cross-examination, she testified the last time she observed Miller on the security camera, he had a knife in his hand, but as she approached Miller, she lost the visual and the situation "went from zero to 100 that quick." *Id.* at 43-44. She did not know where that knife was. *Id.* at 44. She could not say definitively whether Miller had a knife in his hand during the scuffle. *Id.* at 48.

{¶ 19} The security officer corroborated the loss prevention officer's testimony. *Id.* at 55-56, 58-59. He testified during the scuffle, he was on Miller's back and Miller "was

almost on all fours, but he kept moving his arm up, his left arm, towards that knife to grab the knife that was around his neck. I was able to move his hand away, grab the knife out of the sheath and then throw it down an aisle." *Id.* at 60. From the security officer's perspective, it looked like Miller was going for the knife around his neck. *Id.* at 60-61. He testified he felt Miller's intention was to slice or stab him. *Id.* at 61. The security officer was hit with Miller's elbow and received a bloody nose and cuts and swelling on the right side of his face. *Id.* at 64-65.

{¶ 20} On cross-examination, the security officer testified he did not see a knife in Miller's hand upon his initial approach, but after the scuffle started, he observed Miller's hand on the handle of the knife around his neck. *Id.* at 68, 71. The security officer admitted he did not include this fact in his report, but could have included it his "Use of Force" report. *Id.* at 73. His report did note that Miller was reaching for "something in the front of his body" and bystanders told him Miller "had a knife around his neck and tried to grab it." *Id.* At no time did the security officer see Miller pull the knife from the sheath. *Id.* at 74.

{¶ 21} Miller argues "it is telling that Appellant had opportunities to put a knife in his hands and attempt to use it as a weapon, but he never did." Appellant's Brief at 13. But the security officer testified to seeing Miller move his arm up towards the knife around his neck and at some point, observed his hand on the handle. The security guard was challenged on cross-examination as to why the hand on the knife was not included in the report. The jury was free to believe or disbelieve the security officer's testimony and consider any discrepancies between his testimony and his report.

{¶ 22} Miller conceded to committing a theft offense and was observed with multiple knives, including one around his neck within his reach. Vol. II T. at 145. During the scuffle with the security officer, he was observed reaching for that knife and his hand on the handle. We find sufficient evidence was presented to support a finding that Miller committed a theft offense with a deadly weapon on or about his person or under his control.

{¶ 23} After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of robbery were proven beyond a reasonable doubt.

{¶ 24} Miller's argument on manifest weight is a general assertion that the jury lost its way. We disagree. We find the jury's verdict was consistent with the weight of credible evidence presented.

{¶ 25} Upon review, we find sufficient evidence, if believed, to support the conviction for robbery, and do not find the jury clearly lost its way nor created a manifest miscarriage of justice.

{¶ 26} Assignments of Error I and II are denied.

{¶ 27} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By King, J.

Delaney, P.J. and

Baldwin, J. concur.